RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 10-5829

JAMES TERRY BRINLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cr-20107—Samuel H. Mays, Jr., District Judge.

Argued: April 10, 2012

Decided and Filed: July 9, 2012

Before: SILER, DAUGHTREY, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael J. Stengel, Memphis, Tennessee, for Appellant. Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Michael J. Stengel, Memphis, Tennessee, for Appellant. C. David Biggers, Jr., UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant James Terry Brinley pleaded guilty to one count of wire fraud relating to a fraudulent investment scheme, in which he converted for his own purposes over three million dollars invested with him by approximately 25 clients. Although the presentence report recommended a federal Sentencing Guidelines range of 63 – 78 months, the district court sentenced Brinley to 108 months in prison. On appeal, Brinley challenges both the procedural and

substantive reasonableness of his sentence. Specifically, he argues (1) that the district court relied on clearly erroneous facts when it denied his motion for a downward departure; (2) that the district court failed to notify him of its intent to vary upward, as required by a local rule; and (3) that the district court gave unreasonable weight to certain sentencing factors, considered impermissible factors, and imposed a substantively unreasonable sentence. Because the district court committed neither procedural nor substantive error, we uphold the sentencing order and AFFIRM the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Brinley operated an investment company, Strategic Capital Management, from 1999-2009, offering clients investments in certificates of deposit and trading accounts, in which investors would purportedly earn returns based upon his day trading. Brinley's investors consisted of friends, neighbors, and family members. He told them that the certificates of deposit were FDIC insured and that their principal was not at risk, and promised above-market interest rates. Instead, Brinley used investors' money to pay returns to other investors, his own business overhead costs, and his personal living expenses. At times during the scheme, Brinley lied to investors who attempted to withdraw funds, telling them to wait because they were "making money" or that their "money was 100% secure."

In April 2009, Brinley found himself unable to carry the scheme any farther and consulted an attorney, who advised him to turn himself in. As a result, he and his attorney met with an Assistant United States Attorney and an FBI agent. At that meeting, Brinley confessed to operating a Ponzi scheme through his investment company. He reported that he owed his investors approximately four million dollars and that he could not pay the funds back. After an FBI investigation, Brinley was charged with three counts of wire fraud, in violation of 18 U.S.C. § 1343.

Brinley entered into a plea agreement with the government, and the district court accepted his guilty plea on one count. As part of the agreement, the government recommended that Brinley receive full credit for acceptance of responsibility and that

he be sentenced at the low end of the applicable sentencing Guidelines range. In advance of Brinley's sentencing, the probation officer prepared a presentence report, calculating Brinley's total offense level at 26, his criminal history level as I, and an advisory Guidelines sentence range of 63-78 months' imprisonment. The government accepted the presentence report without objection. Brinley filed a sentencing memorandum accepting the presentence report but requesting a downward departure under U.S.S.G. § 5K2.16.

At the outset of the sentencing hearing, the district court adopted the presentence report's recommended restitution in the amount of $3,422,198.47, confirmed that the parties had reviewed the presentence report, and adopted its facts and Guideline calculations without objection from either party. Brinley then called John Hutson, his psychiatrist, who testified that Brinley suffered from depression after committing his crimes, and came forward out of remorse. Dr. Hutson also testified that Brinley told him prior to his meeting with the FBI that he owed approximately four million dollars that he could not repay and had already sought legal counsel. The district court then heard impact statements from 14 of the defendants' victims. At the conclusion of the testimony, Brinley argued for a downward departure pursuant to U.S.S.G. § 5K2.16 and a custodial sentence of 46 months. The government objected to the departure but recommended sentencing at the bottom of the guidelines – 63 months – pursuant to the plea agreement.

Relying on facts from the presentence report and Dr. Hutson's testimony, the district court denied the defendant's request for a downward departure. The court rejected Brinley's theory that his offense would not have been detected absent his voluntary disclosure of the crime. After asking Brinley for additional argument, the court stated:

> You haven't persuaded me with anything you've added that this offense wouldn't have been discovered. I'm fully convinced it would have been, and I'm convinced it would have been discovered in short order. The various victims had asked for their money back and he couldn't pay it.

The court further explained that, although Dr. Hutson's testimony that remorse motivated Brinley's cooperation was credible, it was insufficient to necessitate a downward departure where the crime was likely to be discovered. The court further clarified that it had not relied upon the unsworn victim impact statements for any facts.

Finally, the district court analyzed each of the sentencing factors under 18 U.S.C. § 3553(a). After argument from both parties, the court concluded that the guideline calculations failed to capture the severity of the offense, focusing mainly on the number of victims affected, the vulnerability of the victims, the need for deterrence, and the amount of restitution owed. The court gave Brinley several additional opportunities to argue against an upward variance and, after considering those arguments, imposed a sentence of 108 months' imprisonment. The court then specifically asked whether Brinley had any objections to the sentence, other than those previously argued. Brinley responded that he had no additional objections.

## DISCUSSION

### A. Procedural Reasonableness

We review a district court's sentence under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court commits procedural error and abuses its sentencing discretion by improperly calculating the Guidelines range; treating the Guidelines as mandatory; failing to adequately consider the § 3553(a) factors; selecting a sentence based on clearly erroneous facts; or failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range. *See id.* On appeal, Brinley argues that his sentence is procedurally unreasonable because the district court relied on clearly erroneous facts when it denied his motion for a downward departure, and the district court violated a local rule of criminal procedure when it imposed an upward variance absent prior notice to him.

**1. Downward Departure**

Brinley requested a downward departure under U.S.S.G. § 5K2.16 based on his voluntary disclosure of his offense to authorities.  Section 5K2.16 provides:

> If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a downward departure may be warranted.  For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendants's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct.

U.S.S.G. § 5K2.16.   The district court denied Brinley's 5K motion.  Although it recognized that Brinley was remorseful and voluntarily disclosed his criminal activity, it also found that the offense was likely to have been discovered otherwise, stating:

> My reading of the record  is that this offense was highly likely to have been discovered otherwise; that is, that Mr. Brinley was at the end of his rope; that he had played out his scheme as far as it could play out; and he reached a point where he was unable to continue to bilk people . . . .  [I]t is apparent from the record that many of these people were demanding their money back.  They'd reached a point where trust in Mr. Brinley had begun to unravel or at least they wanted money and they couldn't get it.  So, he was under severe pressure, as I read the record, to do something; and he went to [defense counsel.]   And he said, what do I do?  And [defense counsel] quite properly said, Turn yourself in.

Thus, the district court concluded that "the downward departure under 5K2.16 would be inappropriate."

Departures under Section 5K2.16 are discretionary.  *See United States v. Erpenbeck*, 532 F.3d 423, 439 (6th Cir. 2008).  Moreover, a district court's denial of a discretionary downward departure is not reviewable, unless the trial court incorrectly believed that it lacked the authority to downwardly depart.  *See United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005) (internal citations omitted) ("[W]e shall not review

decisions of a district court not to depart downward unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure.").  The record shows that the district court carefully considered the motion for a downward departure and understood its discretion to make such a departure but concluded that it was inappropriate in this case.  Brinley argues, however, that the district court's decision not to depart relied on a clearly erroneous fact – that the offense was likely to be discovered.  Relying on clearly erroneous facts in selecting a sentence would, of course, constitute a procedural error amounting to an abuse of discretion. *See Gall*, 552  U.S. at 51.

However, our review of the undisputed evidence in the record convinces us that the district court did not clearly err in finding that Brinley's offense was likely to be discovered.  In rejecting Brinley's request for a downward departure, the district judge noted that he was "relying on facts in the presentence report essentially and on the doctor's testimony."  Dr. Hutson testified that Brinley told him prior to meeting with the FBI that "he knew he was in serious trouble, that he had contacted family members about representation [be]cause  he thought he was going to need an attorney." According to Dr. Hutson, Brinley also informed him that he owed clients much more money than he could repay.  In addition, the presentence report contains several statements from victims indicating that, prior to Brinley's meeting with the FBI, they had demanded repayment.  In light of the record, including the testimony presented at the hearing, we cannot say that the district court committed procedural error in denying the motion for a downward departure under section 5K2.16.

### 2.  Local Rule

Brinley also contends that his sentence is procedurally unreasonable because it was imposed in violation of the notice requirement of Local Criminal Rule 32.1(e), which provides:

> At least seven (7) days prior to the scheduled sentencing proceeding, the probation officer shall transmit to the sentencing judge the pre-sentence investigation report, including guidelines computations, and an addendum indicating any unresolved factual disputes or objections by the

parties with respect to the application of the guidelines, and the probation officer's opinion concerning any disputed issues. *Upon review of these materials, the sentencing judge will notify the parties if the court intends to consider a sentence outside the applicable guideline range on a ground not identified as a ground for variance either in the pre-sentence report or a pre-hearing submission. In this event, the sentencing judge will reset the sentencing hearing if necessary.*

W.D. Tenn. L.Cr.R. 32.1(e) (emphasis added). A district court has authority to adopt local rules, which have the "force of law." *Hollingsworth v. Perry*, __ U.S. __, 130 S.Ct. 705, 710 (2010) (citation omitted). Although the notice requirement of Rule 32 of the Federal Rules of Criminal Procedure applies to departures only, *see United States v. Irizarry*, 553 U.S. 708, 715-16 (2008), the plain language of the local rule extends the requirement to variances as well. Brinley contends that because he did not have prior notice of the judge's intent to vary, as required by the local rule, he was denied a meaningful opportunity to address the upward variance before it was imposed. We note, however, that Brinley did not invoke Local Rule 32.1(e) in the district court or request the court to reset the hearing once it became clear that the district court intended to vary upward in sentencing.

Assuming, without deciding, that the district court violated the local rule, we nevertheless deny Brinley's claim. Despite having several opportunities to object at the sentencing hearing, Brinley raised this claim for the first time on appeal. "With respect to the procedural reasonableness of the sentence, the court is limited to plain error review if the trial court invited the defendant's objections to the sentence pursuant to *United States v. Bostic*, 371 F.3d 865, 871-72 (6th Cir. 2004), and the defendant failed to raise the issue at that time." *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011). "To avoid plain error review, "[a] party must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *Bostic*, 371 F.3d at 871(citations omitted). At the close of the sentencing hearing, the district court invited objection in compliance with *Bostic*. Although Brinley presented argument opposing the variance generally, he failed to raise a claim under Local Rule 32.1(e). Thus, we are limited to plain-error review on appeal.

Under the plain error standard of review, Brinley must show that there was error; that the error was "clear or obvious rather than subject to reasonable dispute"; that it affected his substantial rights; and that it seriously affected the fairness, integrity or public reputation of the proceedings. *Massey*, 663 F.3d at 856 (citation omitted). Moreover, "the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong" of plain error review. *United States v. Keller*, 665 F.3d 711, 714 (6th Cir. 2011) (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)). "A showing of prejudice requires a showing that the plain error affected the outcome of the district court proceedings." *Keller*, 665 F.3d at 714. "On plain error review, the defendant bears the burden of persuasion with respect to prejudice." *United States v. Gabbard*, 586 F.3d 1046, 1051 (6th Cir. 2009).

Brinley is not entitled to relief under the plain-error standard because he has not shown that he was prejudiced by the lack of notice. "Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues." *Irizarry*, 553 U.S. at 715. In this case, prior to sentencing, Brinley had notice of the facts relied on by the district court. Instead of confronting and debating those facts, he chose to present additional evidence; he sought to demonstrate that he deserved a low-end sentence because he came forward voluntarily, suffered from depression, and was remorseful. The district court thoroughly considered the evidence Brinley presented but concluded that an upward variance was appropriate because the Guidelines failed to reflect adequately the seriousness of the offense.

In sum, the overall purpose of notice – that sentencing issues be adequately presented and considered – was fulfilled at the hearing. *See id.* at 715-16. Brinley points to no relevant issue that he did not anticipate or have the opportunity to address at the sentencing hearing, although he does contend on appeal that with proper notice, he would have presented additional testimony related to the legitimate aspects of his business, subpoenaed the victims for statements under oath, and called family members

to testify that he did not take advantage of personal relationships to carry out his scheme. This evidence, however, was already before the district court in the presence report and Brinley's position paper, and it was fully addressed at the sentencing hearing. Moreover, the district court was principally concerned with the losses caused by the Ponzi scheme, not the legitimate aspects of Brinley's business. In addition, the court referred to Brinley's predatory nature only briefly in reference to the undisputed vulnerability of his victims, and explicitly did not depend on facts from the victim impact statements in determining Brinley's sentence. We are not persuaded that the proposed additional testimony would have played a role in the imposition of sentence.

Thus, this case is not one in which notice of the district court's intent to vary "would have changed the parties' presentations in any *material* way." *Irizarry*, 553 U.S. at 715 (emphasis added) (stating that a party may have a legitimate basis for claiming that the lack of notice was prejudicial if the factual basis comes as a surprise and notice would have changed the party's presentation of evidence). Brinley has not met the plain-error standard because he has not shown that compliance with the local rule would have had an impact on his ultimate sentence. *See United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). Because any error committed by the district court did not prejudice him, Brinley's claim fails under the third prong of the plain-error doctrine. *See Gabbard*, 586 F.3d at 1051.

Brinley, moreover, has failed to convince us that the district court's failure to follow the local rule affected the fairness, integrity, or public reputation of the proceedings. The record reflects that the district court considered the core thrust of all of the arguments presented at the hearing and in this appeal. Because Brinley cannot show any meaningful benefit that he would receive from remand, he has failed to establish that the alleged error influenced the fairness, integrity, or public reputation of the proceedings. *See United States v. Page*, 232 F.3d 536, 545 (6th Cir. 2000) (finding that the fairness of the proceedings was not affected by the error because, absent the error, the defendants' sentences would have been the same as those which were imposed).

**B. Substantive Reasonableness**

Having found the district court's sentence "free from significant procedural error," we next address Brinley's claim that his sentence was substantively unreasonable. *United States v. Vowell*, 516 F.3d 503,509 (6th Cir. 2008). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 616 F.3d 605, 610 (6th Cir. 2010) (internal quotation marks omitted). Although a within-Guidelines sentence is presumed reasonable, "if the sentences is outside the Guidelines, the court may not apply a presumption of unreasonableness." *Gall*, 552 U.S. at 51. Instead, "we must review every sentence that is free from significant procedural error under a deferential abuse-of-discretion standard, regardless of whether the sentence is within the Guidelines range or significantly outside it." *Vowell*, 516 F.3d at 509.

Moreover, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," and the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 511. We are, however, "permit[ted] . . . to require some correlation between the extent of a variance and the justification for it." *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008)). In this case, after emphasizing that the variance in his 108-month sentence is 45 months longer than the sentence recommended by the government and 30 months longer than the top of the applicable advisory guideline range, Brinley argues that the extent of the variance alone makes the sentence substantively unreasonable. Brinley further argues that the district court gave an unreasonable amount of weight to the victim impact statements; that the district court placed too much emphasis on Brinley's inability to make substantial restitution; and that the district court considered an impermissible factor when it noted that the victims were individuals, rather than a bank or corporation.

*Gall* clearly forecloses Brinley's first argument, however, because a sentence outside the guideline range is not *per se* unreasonable. *See Gall*, 552 U.S. at 51. The record reflects that the district court carefully addressed and weighed the parties' arguments for and against the variance, including Brinley's individual characteristics and the fact that he had come forward on his own, analyzed *each* of the § 3553(a) factors, and understood the sentencing options. Summarizing these considerations, the court provided the following basis for the variance:

> Considering the guidelines as one of the 3553 factors, do the guidelines really work? Do they accomplish their purpose? Here, they work in several ways. They recognize acceptance of responsibility. They recognize the absence of criminal history. They recognize much about the seriousness of the offense because they capture a dollar loss. There are intangibles here that the guidelines are not designed to and do not capture . . . What did Mr. Brinley do to bring this about? And what does that say about him? When I look at his history and characteristics, including the need for protection of the public, what does it say and how does one go about deterring such conduct in the future when you have a crime of this seriousness, an ongoing crime with an enormous amount of loss and vulnerable victims and multiple victims? And if you look at the guidelines is that enough? For the reasons I've said, it's hard to see that it is. The problem I always have, of course, when you get outside the guidelines or even within the guidelines sometimes: How do you parse it out? How do you say if the guidelines aren't enough, how much is? If the low end isn't right, how much increase within the guidelines is appropriate? And there is built into that process a certain amount of subjectivity that the guidelines are designed to avoid. Post-*Booker*, that subjectivity is inevitable, I would suggest, and not necessarily a bad thing. That's what I'm trying to say, not that, per se, it's different between one sort of victim and another sort of victim, but it is necessary to look at all the facts of each case and try to evaluate each situation. The facts here are egregious . . . Do the guidelines promote uniformity? I think not in this case. It's an unusual case in many ways. It's unusual in the breadth of what's happened here and by that I mean in the lengthy nature of this scheme and the kinds of people or the way . . . [they've] been victimized.

As in *Grossman*, the district court "never lost sight of the sentence recommended by the guidelines and gave ample reasons" for the variation. *Grossman*, 513 F.3d at 597. We conclude that the court's careful consideration of the § 3553(a) factors "is just the sort

of balancing a sentencing court should be doing." *United States v. Paull*, 551 F.3d 516, 529 (6th Cir. 2009).

Brinley's remaining arguments are also without merit. There is no evidence that victim impact statements or the need for restitution were given unreasonable weight in the court's analysis. Moreover, the district court did not consider an impermissible factor when it noted that the victims were individuals, not banks or corporations, given that the statute requires the sentencing court to consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1),(7). In doing so, the district court compared victims to banks only to demonstrate their relative inability to recover from Brinley's scheme. The comparison was not improper.

## CONCLUSION

For the reasons set out above, we uphold the district court's sentencing order and AFFIRM the court's judgment.