NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0540n.06

No. 15-6131

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Sep 19, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HAROLD WAYNE SALYERS, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     COLE, Chief Judge; DAUGHTREY and MOORE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Defendant Harold Wayne Salyers was convicted by a jury of four heroin-related offenses, including one count of distribution of heroin, the use of which resulted in death.   A Supreme Court decision, issued on the day of Salyers's sentencing, caused the district court to vacate the conviction on the charge of distribution resulting in death, and the United States moved to dismiss that charge.   Salyers was sentenced on the remaining counts.   Two appeals and remands followed.   In this third appeal of his sentence, Salyers challenges the district court's decision to depart upward because of the death, the court's refusal to reduce his Sentencing Guidelines range for acceptance of responsibility, and the overall reasonableness of his sentence.   We find that the district court did not abuse its discretion and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Salyers often drove from his home in Winchester, Kentucky, to Cincinnati, Ohio, to purchase heroin, but he rarely used it himself. Instead, he sold the heroin in Winchester or gave it to women in exchange for sexual favors.

On August 5, 2012, Salyers returned from a trip to Cincinnati and gave some heroin to Wade Dickerson. Dickerson was a diabetic, who struggled with drug addiction and was on multiple prescription medications. On August 7, Dickerson overdosed on heroin after injecting it intravenously, and he died the next day. A medical examiner testified at trial that Dickerson died from "cardiopulmonary arrest due to acute combined effects of heroin, Oxycodone and Clonazapin." The examiner could not pinpoint exactly which drug caused his death but testified that the most prominent drug in his system was the heroin. A forensic toxicologist testified that the level of Oxycodone in Dickerson's system was not toxic but that the level of heroin was.

Following Dickerson's death, the police interviewed Salyers twice, and in both taped interviews, he admitted giving Dickerson heroin prior to his death. Salyers initially was charged in state court and released on bail. He apparently continued to distribute heroin, and on February 26, 2013, he sold heroin to a confidential informant in a controlled buy.

On June 6, 2013, Salyers was indicted on four federal heroin-related charges:

- Count I: conspiracy to distribute heroin

- Count II: distribution of heroin, the use of which resulted in Wade Dickerson's death

- Count III: possession of heroin with the intent to distribute, and

- Count IV: distribution of heroin.

Salyers pleaded not guilty to all of the charges, but at trial he admitted through counsel that he was guilty of Counts I, III, and IV and that he had distributed heroin to Dickerson prior to his death, as alleged in Count II. Salyers's sole defense at trial was that the government had not proven that he was criminally responsible for Dickerson's death. Salyers did not present any evidence at trial. The jury convicted him on all four counts.

Salyers initially was sentenced to 240 months of imprisonment, which was the mandatory minimum resulting from his conviction on Count II, the charge of distribution resulting in death. However, on the day of Salyers's sentencing, the Supreme Court issued an opinion holding that a defendant cannot be liable for distributing a drug causing death unless the drug in question was a "but-for cause of the death" and not merely a contributing factor. *Burrage v. United States*, 134 S. Ct. 881, 892 (2014). As a result, the district court granted Salyers's motion to reopen his sentencing and vacated his conviction on Count II. At the second sentencing hearing, the government dismissed Count II without prejudice. The court then calculated a Guidelines range of 78–97 months, departed upward based on Dickerson's death, and sentenced Salyers to 120 months.

Salyers appealed, and we held that he should not have been subject to an enhancement for being a leader or organizer, vacated his sentence, and remanded for resentencing. *United States v. Salyers*, 592 F. App'x 483, 486 (6th Cir. 2015). On remand, the district court *sua sponte* issued an opinion and order determining that no hearing was needed and resentencing Salyers to 120 months. *United States v. Salyers*, No. 13-cr-73-JMH, 2015 WL 859367, at \*1–2 (E.D. Ky. Feb. 27, 2015). Salyers moved for reconsideration, arguing that he was entitled to a hearing. He also sought a reduction of sentence pursuant to Amendment 782 to the drug-quantity tables in the Guidelines. The district court denied both motions in a brief text entry in the docket, and Salyers

again appealed. After the government filed a motion conceding that Salyers was entitled to a resentencing hearing, we once again vacated Salyers's sentence and remanded for resentencing. *United States v. Salyers*, No. 15-5367 (6th Cir. Aug. 14, 2015) (order).

There then ensued a third sentencing hearing, and Salyers was sentenced for the fourth time. This time the district court recalculated Salyers's Guidelines range without applying the leadership enhancement and with the two-level reduction in offense level required by Amendment 782, at 41–51 months. However, the court declined to reduce Salyers's offense level further based on acceptance of responsibility, stating, "I believe he did not really take any responsibility for the death of Mr. . . . Dickerson . . . [w]hich I think he bears some responsibility for." The court sentenced Salyers to 72 months, once again departing above the Guidelines range based on Dickerson's death. Salyers now appeals his 72-month sentence.

## DISCUSSION

We review a district court's sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Benson*, 591 F.3d 491, 500 (6th Cir. 2010). In doing so, we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses, . . . accept the findings of fact of the district court unless they are clearly erroneous[,] and . . . give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

"A district court commits procedural error and abuses its sentencing discretion by improperly calculating the Guidelines range; treating the Guidelines as mandatory; failing to adequately consider the § 3553(a) factors; selecting a sentence based on clearly erroneous facts; or failing to adequately explain the chosen sentence, including an explanation for any deviation

-4-

from the Guidelines range." *United States v. Brinley*, 684 F.3d 629, 633 (6th Cir. 2012). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 636 (internal quotation marks and citation omitted). Salyers challenges the district court's decision to sentence him above the Guidelines range based on Dickerson's death, the court's refusal to reduce his Guidelines range based on acceptance of responsibility, and the substantive reasonableness of his sentence under the circumstances.

**Upward Departure for Dickerson's Death**

A sentencing court may depart above the advisory Guidelines range if death resulted from the offense. U.S.S.G. § 5K2.1. The Guidelines also permit the court to depart upward "to reflect the actual seriousness of the offense based on conduct" underlying a charge that was dismissed or not pursued. U.S.S.G. § 5K2.21. Salyers does not appear to challenge the district court's factual finding that he was responsible "in some degree" for Dickerson's death. Even if Salyers were to make this challenge, we would not hold the district court's finding to be clearly erroneous because there is ample support in the record to find by a preponderance of the evidence that Dickerson's death resulted from Salyers's conduct. *See United States v. Churn*, 800 F.3d 768, 780 (6th Cir. 2015) (relying on the rule that a sentencing court may consider conduct that has been proved by a preponderance of the evidence). Salyers admitted giving heroin to Dickerson two days before he overdosed but sought to create doubt in the jurors' minds concerning his responsibility for the death. However, he offered no evidence at trial that some other supplier was the source of the heroin that caused Dickerson's fatal overdose. As a result, we conclude that the district court did not clearly err in finding that Dickerson's death resulted

from Salyers's conduct and, thus, did not abuse its discretion by enhancing Salyers's sentence on that basis.

## Acceptance of Responsibility

"If the defendant clearly demonstrates acceptance of responsibility for his offense," his offense level decreases by two. U.S.S.G. § 3E1.1(a). The defendant bears the burden of showing by a preponderance of the evidence that such a reduction is warranted. *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). "Typically, we review for clear error a district court's determination that a defendant is not entitled to a downward adjustment for acceptance of responsibility." *United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012). "However, if the only issue presented is the propriety of applying the reduction to the uncontested facts, the decision is reviewed de novo." *Id.* (quoting *United States v. Reaume*, 338 F.3d 577, 582 (6th Cir. 2003)). The parties disagree about which standard of review we should apply. We need not resolve this dispute because, for the reasons explained below, the district court's decision was not clear error, and we would reach the same result if we reviewed the issue *de novo*.

The application notes to § 3E1.1 elaborate some factors to be considered when assessing whether the acceptance-of-responsibility reduction applies:

1.  In determining whether a defendant qualifies . . . appropriate considerations include, but are not limited to, the following:

    (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant

conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

(B) voluntary termination or withdrawal from criminal conduct or associations;

. . . . .

2. This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, comment.

Salyers maintains that he accepted responsibility because he admitted, in interviews with law enforcement and through counsel during trial, the conduct described in Counts I, III, and IV and the conduct underlying Count II (giving Dickerson heroin before his death). At trial, Salyers disputed only whether the heroin he provided was the cause of Dickerson's death, and that charge ultimately was dismissed. The defendant's argument has an intuitive appeal: Why should he be required to accept responsibility for conduct that formed the basis of a charge that the government ultimately dismissed?

The answer lies in the application notes quoted above. To benefit from § 3E1.1's reduction, the defendant must accept responsibility not only for the offense of conviction but also for any additional relevant conduct. U.S.S.G. § 3E1.1, comment. Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or

willfully caused by the defendant; and . . . all harm that resulted from the[se] acts and omissions." U.S.S.G. § 1B1.3(a). The district court determined by a preponderance of the evidence, and we agree, that Dickerson's death was a harm that resulted from the defendant's acts. As explained above, there is ample support in the record for this finding. By denying responsibility for Dickerson's death, Salyers "acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 comment. (n.1(A)).

Salyers distributed heroin to other individuals during the days surrounding Dickerson's overdose, and he continued to distribute heroin after he was released on bail following his first arrest on state charges. He plainly did not "voluntary[ily] terminat[e] or withdraw[] from criminal conduct or associations." U.S.S.G. § 3E1.1 comment. (n.1(B)). Furthermore, Salyers made statements in a letter he mailed to the district court and during a colloquy with the judge at the second sentencing hearing that indicated a lack of acceptance of responsibility for his illegal actions. He attempted to shift the blame to others, stating, "[T]hey conned me into it, they talked me into giving in to him to get his truck out of hock so he could go to work." He added that Dickerson asked for the heroin and that the women with whom he exchanged heroin for sex were using drugs before he met them. He also told the judge, "I think I should have a lighter sentence because the guy OD'd." These statements provide further support for finding that Salyers did not accept responsibility for his offense. We conclude that the district court did not err in denying Salyers a reduction in offense level based on acceptance of responsibility.

**Substantive Reasonableness of Sentence**

Salyers asserts that his sentence is unreasonable because the district court did not adequately consider and properly weigh the 18 U.S.C. § 3553(a) factors. Specifically, Salyers

argues that the court did not properly consider and weigh his argument that his actions were not malicious and that Dickerson bore significant responsibility for his own demise because he begged Salyers for the heroin under false pretenses and then chose to inject himself with a large quantity of heroin after being warned that he might kill himself. Salyers also points to his absence of prior felonies and excellent work history as factors that weigh in favor of a more lenient sentence.

The record demonstrates that the district court adequately considered and weighed the § 3553(a) factors and did not abuse its discretion in sentencing Salyers to 72 months. At the second sentencing hearing, the court noted that it did not depart as high as the government requested because Salyers had no criminal history and suffered from health problems. At that same hearing, the court listened to the defendant explain at some length the reasons for which he believed he should receive a more lenient sentence, including Dickerson's culpability. At the third sentencing hearing, Salyers's counsel incorporated the prior discussions, stating, "I feel the 3553(a) factors have been fully briefed before here, and I would just simply say, you know, he doesn't have any criminal history; but obviously the court's well aware of the negative aspects of this case as well."

We do not require the district court to undertake a "ritualistic incantation" of the § 3553(a) factors. *See United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005) (internal quotation marks and citations omitted). Over the course of the three sentencing hearings in this matter, the district court considered and rejected each of the arguments the defendant now urges on appeal. In essence, his complaint on appeal is that, after considering these factors, the district court did not conclude that a lower sentence was appropriate. However, none of the considerations Salyers raises compelled the district court to impose a lower sentence, and

Salyers's disagreement with the district court's decision does not make his sentence procedurally or substantively unreasonable. *See United States v. Overmyer*, 663 F.3d 862, 864 (6th Cir. 2011). We are satisfied that the district court sufficiently explained its sentence and did not abuse its discretion by sentencing Salyers to 72 months.

For the reasons set out above, we AFFIRM the district court's judgment.