**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0225n.06

**Nos. 16-6560, 17-5033, and 17-5220**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
            v. )
)
BENJAMIN FREDRICK CHARLES ROBINSON, )
NAVARIUS SAVELL WESTBERRY, and DION )
TERRY TAYLOR, )
)
    Defendants-Appellants. )
)

**FILED**
May 01, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: GILMAN, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendants trafficked heroin and fentanyl, resulting in at least two overdoses and one death. They pleaded guilty to various conspiracy-to-distribute counts under 21 U.S.C. §§ 841(a)(1), 846, and the district court imposed significant terms of imprisonment. Robinson and Taylor appeal their sentences, mainly claiming the district court erred in upwardly departing from their respective Guidelines ranges under § 5K2.1 because "death resulted" from their conduct. Westberry appeals the district court's denial of his motion to withdraw his guilty plea, and claims ineffective assistance of counsel during the plea stage. For the following reasons, we affirm.

I.

Defendants Benjamin Robinson, Navarius Westberry, and Dion Taylor distributed heroin and fentanyl (marketed as, or mixed with, heroin) in Madison County, Kentucky. They promoted their narcotics as a "'new batch' from Detroit," which generally flowed from Westberry to Taylor to Robinson to individual buyers. One of the purchasers, Alyssa Silvia, overdosed on fentanyl (which she believed to be heroin) purchased from Robinson. But for receiving emergency medical treatment, Silvia would have died from her overdose. Corey Brewer was not so fortunate. After his friend purchased what was supposedly heroin from one of Robinson's associates for their collective use, Brewer overdosed, and died of acute fentanyl toxicity.

A grand jury indicted defendants for conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846 (count 1); conspiracy to distribute fentanyl resulting in Brewer's death, in violation of 21 U.S.C. §§ 841(a)(1), 846 (count 2); and conspiracy to distribute fentanyl resulting in serious bodily injury to Silvia, in violation of 21 U.S.C. §§ 841(a)(1), 846 (count 3). Pursuant to plea deals, defendants pleaded guilty to some counts in exchange for the government dismissing the remainder: Westberry pleaded guilty to counts 1 and 2; Taylor pleaded guilty to count 1; and Robinson pleaded guilty to count 3.

Westberry moved to withdraw his guilty plea four months later, which the district court denied in a written order. It then sentenced Westberry to life in prison. Westberry does not appeal his sentence. Instead, he claims the district court erred in denying his motion to withdraw his guilty plea, and that he received ineffective assistance of counsel during plea proceedings.

Robinson and Taylor appeal only their sentences. The district court sentenced them to 220 and 262 months of imprisonment, respectively. In crafting their sentences, the district court

heard testimony regarding the circumstances surrounding Sylvia's near death and Brewer's death; on this basis, it departed upward under Guidelines §§ 5K2.1 and 5K2.21 (four levels for Robinson and five for Taylor) because Brewer's "death resulted" from their charged, but dismissed, conduct. Robinson and Taylor specifically take issue with this departure, but they also raise other challenges to their sentences—Taylor contends his sentence is substantively unreasonable, and Robinson objects to the district court's restitution order relating to the funeral costs associated with Brewer's death.

## II.

We begin with the main issue in this consolidated appeal, the district court's § 5K2 upward departures for Robinson and Taylor. U.S.S.G. § 5K2.1 provides that "[i]f death resulted, the court may increase the sentence above the authorized guideline range." The Guidelines also contemplate upward departures "to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, . . . ; and (2) that did not enter into the determination of the applicable guideline range." § 5K2.21. Following an evidentiary hearing, the district court concluded upward departures were appropriate for both Robinson and Taylor because (1) it found Brewer's death "resulted" from their conduct (§ 5K2.1) and, (2) the Guidelines permitted consideration of Brewer's death because the plea agreements dismissed the count relating to his death and the death did not play a role in determining the defendants' Guidelines ranges (§ 5K2.21).

We review a district court's decision to upwardly depart in the same way we "judge the procedural and substantive reasonableness of a variance from any guidelines range." *United States v. Erpenbeck*, 532 F.3d 423, 440 (6th Cir. 2008) (alterations and citation omitted). That is, we apply the familiar abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46

(2007). We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

A.

First, Robinson and Taylor both contend the district court erred in upwardly departing by utilizing judicial factfinding under the more relaxed preponderance-of-the-evidence standard instead of the most demanding beyond-a-reasonable-doubt standard. Their contentions run headlong into existing adverse precedent.

District courts may "consider dismissed and acquitted conduct when imposing sentences below the statutory maximum." *United States v. Churn*, 800 F.3d 768, 780 (6th Cir. 2015). It has long been settled that the government must establish such enhancing conduct by a preponderance of the evidence. *See, e.g.*, *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). *Watts* remains good law, *see, e.g.*, *United States v. White*, 551 F.3d 381, 383–84 (6th Cir. 2008) (en banc), and applies equally to charged, but dismissed, conduct. *See United States v. Conway*, 513 F.3d 640, 645–46 (6th Cir. 2008). "[S]o long as the ultimate sentence falls with the statutory range," as defendants' sentences do under 21 U.S.C. § 841(b), "a defendant who enters a plea agreement . . . waives any constitutional right to a jury determination of guilt or sentencing facts." *Conway*, 513 F.3d at 646.

This precedent notwithstanding, defendants claim *Burrage v. United States*, 134 S. Ct. 881 (2014), and *United States v. Rebmann*, 321 F.3d 540 (6th Cir. 2003), require "death results" findings to be made by a jury beyond a reasonable doubt. However, those cases involved "death results" enhancements that were part and parcel of the elements of the convicted offense. *See*

*Burrage*, 134 S. Ct. at 887 (21 U.S.C. § 841(b)'s statutory enhancement); *Rebmann*, 321 F.3d at 543 (U.S.S.G. § 2D1.1(a)'s base offense levels).[1]   That is not what we have here; rather, the district court enhanced defendants' Guidelines ranges on the basis of relevant and not offense conduct.   Accordingly, we decline defendants' invitations to do what we cannot do—disagree with the Supreme Court in *Watts*, the en banc court in *White*, and the panel in *Conway*.

B.

Taylor raises a separate challenge to the district court's upward departure.   Following the lead of several (but not all) of our sister circuits, Taylor argues § 5K2.1's "death resulted" enhancement required the district court to find Brewer's death was either "intended" or "knowingly risked."   *See, e.g.*, *United States v. White*, 979 F.2d 539, 544–45 (7th Cir. 1992). Because Taylor failed to raise this argument below, we review for plain error.[2]   *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013).   This demanding standard requires Taylor to establish (1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings.   *Id.* at 601.   He cannot.

For one, a "court of appeals cannot correct an error . . . unless the error is clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993).   A lack of precedent "preclude[s] a] finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).   As does a circuit split.   *Id.*   Here, there was (and still is) no binding Sixth Circuit or Supreme Court

---

[1]This point also distinguishes Robinson's reliance upon a Seventh Circuit case involving drug-quantity enhancements for a convicted offense under the Guidelines post-*Booker*.   *See United States v. Macedo*, 406 F.3d 778, 788 (7th Cir. 2005).

[2]Taylor concedes he failed to raise this issue below, but nonetheless argues we should exercise our discretion under the general rule that we do not review issues raised for the first time on appeal, and consider his argument de novo.   However, this request conflates the plain-error review standard with our general forfeiture principles.   *See, e.g.*, *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528–29 (6th Cir. 2014).

precedent requiring a district court to make an "intended" or "knowingly risked" factual finding, and our sister circuits appear to be in discord. *Compare White*, 979 F.2d at 544–45, *with United States v. Bayles*, 1993 WL 46892, at *3 n.1 (4th Cir. 1993) (per curiam) (disagreeing with *White*). These two independent considerations dictate a no-plain-error finding.

And even were we to adopt Taylor's standard, we cannot agree the purported error would affect Taylor's substantial rights. After all, the district court expressly found Taylor knew "that injuries and death were resulting from the product that was being distributed" and yet continued to distribute drugs "notwithstanding that risk that was known." The record reflects this: The district court heard testimony from the DEA agent who interrogated Taylor following his arrest, in which the agent recounted Taylor "mention[ed] that he knew [the drugs were] killing people," that Taylor "knew this was wrong," that he "knew people were dying," and that Brewer's fatal fentanyl came downstream from Taylor's supply. Put differently, the district court's factual findings were not clearly erroneous, with or without considering Taylor's requested "intentional or knowingly risked" standard. *See United States v. Salyers*, 661 F. App'x 862, 866 (6th Cir. 2016).

## C.

Robinson's initial brief also hinted at challenging the upward departure because "[t]he statute as well as the guidelines had already taken death and serious bodily injury into account in determining the appropriate sentence." Because Robinson failed to develop this point in his brief, we deem it abandoned, *see Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063

(6th Cir. 2014), and decline to revive it upon receipt of his slightly more developed, but still underdeveloped, reply brief. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).[3]

### III.

Taylor's final claim on appeal is that the district court imposed a substantively unreasonable sentence, a claim which we review for abuse of discretion. *See United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). A district court imposes a substantively unreasonable sentence by "selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent § 3553(a) factors, or giving an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (footnotes omitted). Mindful of our institutional limitations as a reviewing court, we exercise "a great deal of deference" when reviewing a defendant's sentence for substantive reasonableness. *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008). Although we apply a rebuttable presumption of reasonableness to within-Guidelines sentences, *Gall*, 552 U.S. at 51, a sentence falling outside the Guidelines is not entitled to a presumption of unreasonableness. *Id.* We may consider the extent of the district court's deviation from the advisory range, but still "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the [departure]." *Id.*

---

[3]Moreover, Robinson's argument is meritless. He pleaded guilty to conspiracy to distribute fentanyl resulting in *Silvia's serious bodily injury* under 21 U.S.C. §§ 841(a)(1), 846. This carried a twenty-year minimum sentence term under § 841(b)(1)(C), which became his Guidelines range. However, the district court based its upward departure on the dismissed count of conspiracy to distribute fentanyl resulting in *Brewer's death*, in violation of 21 U.S.C. §§ 841(a)(1), 846, under §§ 5K1.1 and 5K1.21. Because this conduct "did not enter into the determination of the applicable guideline range," § 5K1.21(2), Robinson's position is without merit. We therefore deny the government's Motion to Strike Argument I in Robinson's Reply Brief as moot.

Among other things, Taylor points to his youth, his relative lack of criminal history, and his immediate acceptance of responsibility for why he should have received a sentence of less than 220 months. But what he does not do is tell us why the district court abused its discretion in imposing the sentence that it did, thus abandoning any such argument on appeal. *Vander Boegh*, 772 F.3d at 1063.

Moreover, a review of Judge Reeves's thorough sentencing hearing reveals these factors were considered, and that one—Taylor's cooperation—played a role in him receiving a sentence on the lower end of the adjusted Guidelines range (210 to 240 months). This last point makes it clear Taylor's real concern here is not how the district court weighed the § 3553(a) factors, but rather the district court's upward departure in the first instance. Upon a deferential review of Taylor's sentencing, we take no issue with the district court's 220-month sentence in light of the district court's reason for upwardly departing—Taylor's dealing of heroin and fentanyl resulted in the death of one person and the injury of others. *See, e.g.*, *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) ("A district court may place great weight on one factor if such weight is warranted under the facts of the case."). The district court appropriately considered the advisory nature of the Guidelines and the 240-month statutory maximum, credited Taylor for mitigating factors, and imposed a reasonable sentence.

## IV.

The last sentencing aspect of this appeal is Robinson's terse challenge to the district court's imposition of $4,190 in restitution, which represents Brewer's funeral expenses. Because Robinson challenges the propriety of this award, our review is de novo. *United States v. Sizemore*, 850 F.3d 821, 824 (6th Cir. 2017).

Robinson's argument, in total, is as follows:

The District Court erred in finding the Defendant responsible for restitution in relation to a dismissed charge, Count 2 of the Indictment in the amount of four thousand one hundred ninety dollars ($4,190.00). The initial Presentence Investigation Report did not include the monetary penalty; but was included after the time for objections had passed. The monetary penalty is related to Count 2 of the Indictment that was dismissed against the Defendant/Appellant and is representative of expenses related to the death of C.B. The Defendant/Appellant did not enter a plea to Count 2 of the Indictment and therefore should not be held responsible for a monetary penalty related to Count 2.

(And in response to the government's well-reasoned response, Robinson's counsel submitted identical language in reply).[4] Such a curt and unexplained position, which fails to advance "any sort of argument for the reversal of the district court[]," *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007), or "cogent" the-district-court-got-it-wrong analysis, "constitutes abandonment." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016); *see also White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) (noting a "perfunctory" and "nebulous" argument renders an issue forfeited).

Abandonment notwithstanding, Robinson's argument borders on frivolity. Under the Mandatory Victims Restitution Act, "if someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction." *United States v. Elson*, 577 F.3d 713, 723 (6th Cir. 2009) (citation omitted). It may not, however, include "injuries caused by offenses that are not part of the conspiracy of which the defendant has been convicted." *Id.* (brackets and citation omitted). Here, the district court permissibly concluded Brewer's death resulted from the conspirators' conduct, and Robinson agreed that he

---

[4]We acknowledge Robinson *did* object to the imposition of restitution on these grounds, which the district court overruled.

conspired to distribute fentanyl in Kentucky during the time period encompassing Brewer's death. Therefore, the district court properly imposed restitution under 18 U.S.C. § 3663A. *Id.* at 723–24.

V.

Finally, defendant Westberry raises two related non-sentencing claims on appeal. Westberry contends the district court abused its discretion when it denied his motion to withdraw his guilty plea, and that his attorney provided him constitutionally deficient performance during the plea stages.[5] We affirm the district court's denial of Westberry's motion to withdraw, and decline to address his ineffective-assistance claim.

A.

We review a district court's decision denying a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Benton*, 639 F.3d 723, 726–27 (6th Cir. 2011). A district court abuses its discretion when it "relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).

It is well-established that "[a] defendant has no right to withdraw his guilty plea." *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012). Instead, Federal Rule of Criminal Procedure 11 permits the withdrawal of an accepted guilty plea upon a showing of a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a

---

[5]Under the terms of his plea agreement, Westberry waived his "right to appeal the guilty plea and conviction." However, the government does not seek to enforce this appeal bar because Westberry's challenge amounts to a claim that his plea was neither knowing nor voluntary on account of ineffective assistance of counsel.

defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (citation and internal quotation marks omitted). In examining this "fair and just reason" standard, we consider the totality of the circumstances, including the following seven factors set forth in *United States v. Bashara*:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

27 F.3d 1174, 1181 (6th Cir. 1994). "The factors are a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (per curiam). "The relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (citation and internal quotation marks omitted).

Following his December 2015 indictment, Westberry and the government began plea negotiations. The parties eventually came to an agreement, and brought it before the district court on June 24, 2016, for a rearraignment and change-of-plea hearing. However, the district court adjourned the hearing after Westberry indicated he did not "understand the process," was "anxious," and had a hard time comprehending the proceeding.

On August 15, 2016, Westberry reappeared before the district court and entered a guilty plea to conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846, (count 1) and conspiracy to distribute fentanyl resulting in Brewer's death, in violation of 21 U.S.C. §§ 841(a)(1), 846 (count 2). Before taking the plea, the district court confirmed,

among other things, Westberry's educational background, his mental-health history, and his history of drug and alcohol use. Westberry agreed he understood the charges against him, indicated he was satisfied with his attorney's advice and performance, and acknowledged he had read and understood the terms of his plea agreement. As pertinent for his claim on appeal, Westberry admitted that he distributed fentanyl that resulted in Brewer's death (but contended he believed it was heroin). The district court then accepted his guilty plea.

A week later, Westberry's attorney moved to withdraw as counsel. Among other reasons, she claimed that, "after Mr. Westberry's entry of a plea, he called challenging the actions of counsel and the validity of the plea." The district court conducted a hearing on August 29, 2016, and allowed Westberry's attorney to withdraw. During the hearing, Westberry indicated his dissatisfaction with his counsel for not pursuing a medical expert to test the validity of the link between the fentanyl taken by Brewer and his death. He essentially requested an evidentiary hearing on Brewer's cause of death. Yet, when asked whether he anticipated requesting to withdraw his guilty plea, Westberry responded that "I never wanted to withdraw my guilty plea."

More than three months after indicating to the contrary, Westberry then moved to withdraw his plea on December 6, 2016. In support, Westberry blamed his former attorney's lack of attention to his case, faulted her for not pursuing a medical expert, claimed he agreed to plead guilty because he "was overwhelmed with fear and confusion," and contended his counsel's failures left him with no choice but to plead guilty. For the first time, he also espoused his innocence. At a hearing on his motion, Westberry tried to justify the delay in filing his motion to withdraw on the basis that he was trying to secure money to hire a medical expert, claimed he was under the influence of Xanax during his plea hearing, and argued he had expected to have an evidentiary hearing regarding Brewer's cause of death.

The district court denied Westberry's motion in a comprehensive and well-reasoned written order. It concluded Westberry "wholly failed to establish any legitimate reason which would justify setting aside his prior guilty plea," finding none of the *Bashara* factors weighed in his favor. First, 112 days had elapsed between his guilty plea and his motion. Second, the district court rejected Westberry's reasons for his failure to timely move for withdrawal, noting his attorney's performance and the medical-expert issue were known to Westberry before he pleaded guilty and that he expressly disavowed a plea-withdrawal motion two weeks after. Third, Westberry did not maintain his innocence over the course of the proceedings. Fourth, the district court concluded the circumstances of Westberry's plea entry did not justify relief, again noting Westberry could have raised his concerns earlier and accepting Westberry's new position would require the court to discard his earlier statements under oath that he understood what he was pleading to (and after the court gave Westberry an additional month to consider the plea offer). Fifth, it found Westberry's background did not support a claim that he was unable to understand the proceedings, and sixth, concluded his prior, relevant experience with the criminal justice system suggested he understood the nature of the process and was aware of the consequences of his plea.

These conclusions are well-supported in the record and in our case law. Take, for example, the district court's conclusion regarding the length and explanation for the delay. Westberry waited over one hundred days to file his motion, and "[w]e have consistently found shorter periods to be excessive." *Martin*, 668 F.3d at 795 (collecting cases, and noting a delay of ninety-five days "weigh[ed] against withdrawal"). Nor do we take issue with the district court's finding that Westberry knew about the issues supporting his motion before he pleaded guilty, or fault the district court for relying upon Westberry's post-plea assertion that he did not want to

change his plea in light of the same issues. And more to the point, "[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion of setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citation omitted). As the district court ably considered Westberry's motion, we agree this case does not present such a rare circumstance. For these reasons, and for those articulated by the district court, the district court did not abuse its discretion in concluding the *Bashara* factors did not support the withdrawal of a guilty plea.

B.

Westberry also faults the district court for "fail[ing] to address the apparent violation of Appellant's right to the effective assistance of counsel." In his view, his attorney failed to provide an adequate defense during plea negotiations because she did not adequately investigate the circumstances surrounding Brewer's death (Westberry argues there is a possibility something other than fentanyl killed Brewer) and that but for his attorney's failures, he "would have never entered the plea agreement."

Our typical approach to ineffective-assistance claims on direct appeal is to decline to address such claims unless "trial counsel's ineffectiveness is apparent from the record." *Martin*, 668 F.3d at 797. We see no reason to deviate from that approach here, because the record is woefully deficient and counsel's ineffectiveness is not apparent. The district court held no evidentiary hearing regarding a claim of ineffective assistance of counsel; indeed, there is little in the record regarding the medical-testing issue, and more importantly, his prior attorney did not testify. *See, e.g.*, *United States v. Sypher*, 684 F.3d 622, 626 (6th Cir. 2012). And there is good reason why the record is undeveloped for an ineffective-assistance claim—Westberry never

expressly raised one below.  *See United States v. Levenderis*, 806 F.3d 390, 401–02 (6th Cir.

2015).  We therefore decline to address his ineffective-assistance claim in this direct appeal.

## VI.

For these reasons, we affirm the district court's judgments.