RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0405p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

 *v.*

MICHAEL SHANE GABBARD (08-5445),
CHRISTOPHER MATTHEW MUNCY (08-5446),
 *Defendants-Appellants.*

Nos. 08-5445/5446

————————————

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
Nos. 07-00090-001; 07-00090-004—
Danny C. Reeves, District Judge.

Submitted: April 30, 2009

Decided and Filed: November 25, 2009

Before: KENNEDY, GIBBONS, and ROGERS, Circuit Judges.

————————————

## COUNSEL

**ON BRIEF:** Willis G. Coffey, COFFEY & FORD, P.S.C., Mt. Vernon, Kentucky, James D. Hodge, HODGE LAW FIRM, London, Kentucky, for Appellants. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

————————————

## OPINION

————————————

PER CURIAM.[1] Defendants Michael Gabbard and Christopher Matthew Muncy (Muncy) both pleaded guilty to conspiracy to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 846. Gabbard also pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and possession of firearms in

---

[1]This opinion is styled *per curiam* because it was not prepared solely by one member of the panel.

1

furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(g), for which he received a total sentence of 147 months' imprisonment. Muncy received a sentence of 71 months' imprisonment. They appeal their respective sentences here. Because any error in Gabbard's sentence did not result in prejudice to Gabbard, and because the district court's conclusion that Muncy was not a minor participant in the conspiracy is not clearly erroneous, we affirm.

## I. BACKGROUND

In August of 2006, local police in the Eastern District of Kentucky received an anonymous tip that Gabbard was growing marijuana at his residence, where he lived with Ingrid Dekauwe. In March of 2007, a confidential source contacted a Drug Enforcement Administration (DEA) agent and told the agent that Jerry Muncy (Jerry), Muncy's father, had told the source more about Gabbard's marijuana growing and supply operation. The source began to work with law enforcement by initiating a series of marijuana purchases from Jerry with Gabbard as the supplier from March into July of 2007.

*March 9 Transaction.* On March 7, 2007, the confidential source called Jerry to arrange to purchase 25 marijuana plants for $10 per plant. The source indicated that he wanted to pick up the plants directly from Gabbard, but Jerry told the source that Gabbard did not want any strangers around his home. On March 9, the source purchased the 25 plants for $250 from Jerry's residence, where Jerry lived with Kathy Baker.

*April 4 Transaction.* The confidential source arranged another transaction with Jerry in April, which took place at Jerry's residence. The source received 126 plants in exchange for $1,250.

*May 2 Transaction.* The source then arranged with Jerry to purchase 50 marijuana plants for $500. Officers surveilling Gabbard's home observed Jerry arrive in a pickup truck at Gabbard's residence on the day of the deal. Muncy was among the three or four individuals in the pickup with Jerry, and Muncy helped load the pickup with marijuana plants. The truck then departed Gabbard's residence to meet at the

predetermined location with the source. Jerry delivered the plants to the source's vehicle while Muncy stood beside the truck. Upon later count, 52 plants had been involved.

*June 5 Transaction.* On May 11 and May 15, the source spoke with Muncy about doing a deal with him for marijuana plants. On May 11, Muncy told the source that he had 500 marijuana plants available for sale. Muncy stated that he and Gabbard were partners, but that he (Muncy) had not profited from the transactions between the source and Jerry. On May 15, the source spoke with Jerry about the partnership between Gabbard and Muncy; Jerry told the source that Muncy was unreliable and that the source should continue to deal only with Jerry. In a conversation later that day, Muncy indicated to the source that he could distribute 100 or more plants for $8 per plant.

On June 1, the source discussed a prospective marijuana deal with Jerry. Later that day, Jerry and Baker stopped by the source's home to further discuss a marijuana transaction. On June 4, unable to reach Jerry, the source spoke with Baker about the availability of marijuana plants. Baker told the source that she would need to speak with Jerry. Later that day, Jerry returned the source's call and indicated that he would inquire as to whether he could supply the 200 plants that the source sought.

On June 5, the source again discussed a marijuana purchase with Jerry over the telephone. Jerry indicated that he would need to check with Gabbard to determine when he could supply the source with the requested number of plants. After a few hours, DEA agents observed Jerry and Gabbard exiting Gabbard's residence and loading Jerry's vehicle with marijuana plants. Jerry then called the source to set up the transaction. Between them, they exchanged $2,000 for 181 marijuana plants.

*July 12 Transaction.* Just prior to July 12, Jerry and the confidential source discussed doing another marijuana deal. On July 12, the source made arrangements to purchase 100 plants from Jerry that day. At 7:50 p.m., Jerry told the source that his supplier would bring the marijuana to his home in 60 to 90 minutes. At approximately 8:37 p.m., officers surveilling Gabbard's home observed Gabbard loading his car with a plastic tub and departing. Shortly thereafter, the police stopped Gabbard, he consented to a search, and the police found 132 marijuana plants in his vehicle. When the police

stopped him, Gabbard was talking on his cellular phone. Soon thereafter, agents observed a pickup leaving Gabbard's residence. The police stopped the vehicle and found Dekauwe driving; a vehicle search revealed 278 marijuana plants inside. Law enforcement searched Gabbard's residence the same night and discovered marijuana cultivation equipment as well as a number of firearms and ammunition.

## II.  ANALYSIS

Both Gabbard and Muncy pleaded guilty. Gabbard pleaded guilty to conspiracy to manufacture 100 or more marijuana plants, to being a felon in possession of a firearm, and to possession of firearms in furtherance of a drug trafficking offense. He received a total sentence of 147 months' imprisonment—87 months for the conspiracy and for being a felon in possession of a firearm, with a 60-month sentence for possession of firearms in furtherance of a drug trafficking offense to run consecutively as required by the firearms statute. Muncy pleaded guilty to conspiracy to manufacture 100 or more marijuana plants, and he received a sentence of 71 months' imprisonment. Each defendant appeals his respective sentence. Gabbard only challenges the 87-month conspiracy sentence of his consecutive sentences.

### A.    Michael Gabbard

Gabbard's Guideline range as computed in the presentence report (PSR) for the drug conspiracy and felon in possession of a firearm counts was 41 to 51 months. However, because the statutory mandatory minimum sentence for the drug conspiracy count was 120 months, 120 months became the operative Guideline sentence. U.S.S.G. § 5G1.1(b). Gabbard sought a sentence below the statutory mandatory minimum, and the Government, in recognition of Gabbard's substantial assistance, moved under 18 U.S.C. § 3553(e) for such a reduction in sentence. On appeal, Gabbard argues that the district court wrongly confused the application of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. While 18 U.S.C. § 3553(e) allows for a sentence below the statutory minimum, U.S.S.G. § 5K1.1 allows for a departure below the Guideline range. Gabbard makes two related arguments here:  First, he argues that the district court erred by apparently

indicating that it was unable to depart below the 120-month Guideline range for Counts Two and Four without granting a motion under U.S.S.G. § 5K1.1. Second, he argues that the district court failed to properly explain the application of 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 as they related to the sentence imposed.

*First*. Gabbard is correct that the district court did not need to grant motions under both 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 to sentence him below the statutory minimum. The district court reasoned that it needed both 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 motions because going below the statutory minimum here meant going below a Guideline range set at the statutory minimum where the statutory minimum exceeded the maximum of the Guideline range. *See* U.S.S.G. § 5G1.1(b). The § 5K1.1 motion, however, was superfluous. Title 18 U.S.C. § 3553(e) alone provides the district court sufficient authority to sentence the defendant below the statutory mandatory minimum. *See United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007) ("A court may not depart below the statutory minimum unless the government moves for such a departure under either 18 U.S.C. §§ 3553(e) or 3553(f)." (citing *Melendez v. United States*, 518 U.S. 120, 125-26 (1996))). "Where the statutory minimum sentence becomes the Guidelines sentence, . . . a government motion to depart below the Guidelines pursuant to U.S.S.G. § 5K1.1 is, as a practical matter, superfluous," because 18 U.S.C. § 3553 alone allows departure below the statutory mandatory minimum. *United States v. Richardson*, 521 F.3d 149, 159 (2d Cir. 2008). An 18 U.S.C. § 3553(e) motion was both necessary and sufficient to arrive at a sentence below the statutory mandatory minimum in this case.

Title 18 U.S.C. § 3553(e) gives the district court its "[l]imited authority to impose a sentence below a statutory minimum" and provides that "[s]uch sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to [28 U.S.C. § 994]." Section 5K1.1 is the policy statement within the Guidelines "governing downward departures" for substantial assistance. *United States v. Ware*, 161 F.3d 414, 422 (6th Cir. 1998). Based on this statutory structure, departure from the Guidelines is implicit in any departure from a

statutory minimum, as 18 U.S.C. § 3553(e) by its text recognizes that any departure below a statutory minimum is a departure below the Guidelines, and that the sentence must be imposed in accordance with said Guidelines. Thus, to depart below a statutory minimum when the Guideline range is the statutory minimum, a district court need only grant an 18 U.S.C. § 3553(e) motion because of the court's implicit authority to depart below the Guidelines via its inclusion of U.S.S.G. § 5K1.1.

But any error here is not reversible because it was harmless. *See United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) (explaining harmless error's role in reasonableness review). The Government requested, and the district court granted, the U.S.S.G. § 5K1.1 motion. This motion was "superfluous," *Richardson*, 521 F.3d at 159, but because the district court granted Gabbard's request for a sentence below the statutory minimum for substantial assistance, the superfluous motion had no effect upon the proceedings. The district court did not, for instance, believe that it needed a U.S.S.G. § 5K1.1 motion to sentence the defendant below the statutory minimum, deny the motion, and then fail to sentence the defendant below the statutory minimum under the mistaken belief that it lacked such authority. It granted the motion, and then meted out a sentence of 87 months, well below the statutory minimum of 120 months. Therefore, any error was harmless.

*Second*. We need not decide whether the district court failed to adequately explain the determination of the downward departure from the statutory minimum as between 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Any error did not amount to reversible error.

Our review of this issue is for plain error. Gabbard admits that he did not object at sentencing to the district court's explanation of his sentence. He argues instead that he did not have the opportunity to object at sentencing. Before adjourning court, the district court asked "if there [was] any objection to the sentence imposed or to any of these proceedings under *United States v. Bostic*[, 371 F.3d 865 (6th Cir. 2004)], the Sixth

Circuit opinion?"**2** Gabbard argues that this opportunity to object was insufficient because he did not have notice of the § 5K1.1 motion prior to the hearing. This argument may have merit as to the district court's call for a motion under U.S.S.G. § 5K1.1. After the district court solicited the motion and sustained it, however, Gabbard had notice of the motion, and it was his obligation to object at sentencing if the district court failed to adequately explain the reasons for his sentence in light of those motions. With respect to an adequacy-of-explanation argument, this court explained in *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc), that the failure to lodge an adequacy-of-explanation objection following the district court's explication of the sentence and its solicitation of objections per *Bostic* means that, on appeal, we review the sentence for plain error.

Under plain error review, Gabbard must show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)) (internal quotation marks omitted). Assuming error, "[t]he third prong requires us to determine whether . . . there was prejudice to [the] defendant." *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (citing *United States v. Barnett*, 398 F.3d 516, 526 (6th Cir. 2005)).

Gabbard's argument fails under prong three of plain error review because he cannot show prejudice. *United States v. White*, 563 F.3d 184, 197 (6th Cir. 2009) (stating that error affecting substantial rights is, "[i]n other words, . . . prejudicial"). The prejudice in an adequacy-of-explanation challenge comes from the inference that the district court would have reached a different sentence if it had reasoned properly. *See Vonner*, 516 F.3d at 388. The district court stated that it was basing its decision on "the factors for the [c]ourt to consider under Section 5K1.1." According to the Second Circuit in *Richardson*, considering U.S.S.G. § 5K1.1's factors is appropriate in

---

**2**In *Bostic*, this court "announce[d] a new procedural rule" which required "district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they ha[d] any objections to the sentence just pronounced that have not previously been raised." 371 F.3d at 872. In the absence of such an opportunity, the defendant "will not be required to demonstrate plain error on appeal." *Id.*

determining the extent of a departure below the statutory minimum pursuant to 18 U.S.C. § 3553(e). *Richardson*, 521 F.3d at 159; *see also* 18 U.S.C. § 3553(e) (providing that a sentence in view of substantial assistance "shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission"). On plain error review, the defendant bears the burden of persuasion with respect to prejudice. *United States v. Segines*, 17 F.3d 847, 851 (6th Cir. 1994). Gabbard has not met this burden here, as everything in the sentencing transcript suggests that the district court considered the appropriate factors in arriving at his sentence.

## B.    Matthew Muncy

Muncy's sentence must be affirmed because the district court's conclusion that he was not a minor participant in the conspiracy is not clearly erroneous. *See United States v. Samuels*, 308 F.3d 662, 672 (6th Cir. 2002) (quoting *United States v. Williams*, 940 F.2d 176, 180 (6th Cir. 1991)) (stating the standard). In discussing this issue, the district court noted that Muncy had described himself to the confidential source as Gabbard's partner and had attempted to become a more active participant in the conspiracy. Jerry undermined this attempt by telling the source that he should deal exclusively with Jerry. The court noted that Muncy's attempt to become more directly involved included quoting the source a price of $8 per plant if the source were to buy 100 or more plants, a price which was below the price being offered by Jerry. The district court concluded that Muncy "had knowledge of the nature of the conspiracy, that he was involved in the conspiracy in introducing individuals and that he was attempting to increase his share of the profits through increased activity." Relying upon these legally valid factors, it thus denied Muncy the minor participant reduction. *See United States v. Miller*, 56 F.3d 719, 721 (6th Cir. 1995) (holding that "a defendant's knowledge of the scope of a criminal enterprise" can be "relevant to whether the defendant was a minor participant").

This conclusion is not clearly erroneous. The minor participant reduction is only applicable to a defendant who "plays a part in committing the offense that makes him substantially less culpable than the average participant" and who is "less culpable than

most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application notes 3(A), 5. When compared with the other participants, Muncy was less culpable than Gabbard, who was responsible for growing all of the marijuana distributed to the confidential source and who was responsible for at least 994 marijuana plants. Muncy's direct actions of introducing Gabbard and Jerry and of participating in one of the marijuana transactions were not as culpable as Gabbard's actions of providing all of the marijuana. The district court recognized and expressly acknowledged this fact. The district court, nevertheless, found that Muncy was not substantially less culpable than the average participant. This conclusion is not clearly erroneous, particularly in light of Muncy's attempt to increase his role in the conspiracy. Muncy attempted in his discussions with the source to become an intermediary between Gabbard and the source. He claimed to have access to 500 plants, offered a discount, and claimed to be Gabbard's partner to try to convince the source to rely upon him in this capacity. Even though Jerry alone successfully acted as an intermediary between the confidential source and Gabbard, any difference in culpability is diminished by Muncy's attempt to take on this same role.

This same factor distinguishes Muncy from Dekauwe and Baker. Dekauwe lived with Gabbard, assisted in growing the marijuana, and attempted to destroy some of the evidence; unlike Muncy, there was no evidence that Dekauwe attempted to arrange drug transactions or that she directly took part in those transactions. Baker lived with Jerry, she was involved in some of the drug transactions, and she passed a message regarding a drug transaction from the confidential source to Jerry. Unlike Muncy, there is no evidence that she attempted to enlarge her role in the conspiracy by taking on the duties of arranging the drug transactions; instead, she deferred to Jerry. Like Muncy, each of the defendants other than Gabbard—Jerry, Dekauwe, and Baker—was found to be responsible for 794 marijuana plants. Given that the burden is upon the defendant to prove that he was a minor participant, *United States v. Elder*, 90 F.3d 1110, 1134 (6th Cir. 1996), it was not unreasonable for the district court to conclude that Muncy was not

substantially less culpable than the average participant.[3] While an independent review of the record might lead us to grant the minor participant reduction, the essentially factual nature of the district court's determination requires us to give substantial deference to the sentencing court.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.

---

[3]If Muncy introduced Gabbard and Jerry for innocuous reasons, that fact might support a conclusion that Muncy was only a minor participant. However, because Muncy bears the burden to prove that he was a minor participant, this court cannot require the district court to resolve such uncertainties in the evidence in his favor. *See Elder*, 90 F.3d at 1134. Also, Muncy cannot argue that he was responsible for a smaller number of plants than found by the PSR, because he is deemed to have accepted the factual allegation that he was responsible for 794 marijuana plants. *See Vonner*, 516 F.3d at 385.