NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0070n.06

Case Nos. 24-5991/6076

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 03, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| MASON SHELTON (24-5991), TYLER | ) | |
| RICHARD SEABERG (24-6076), | ) | |
| | ) | O P I N I O N |
|     Defendants-Appellants. | ) | |

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In this consolidated criminal appeal, Defendants Mason Shelton and Tyler Seaberg appeal their sentences. Shelton and Seaberg both pleaded guilty to conspiracy to distribute marijuana and conspiracy to commit money laundering. Shelton and Seaberg now challenge their sentences as procedurally and substantively unreasonable. For the reasons stated below, we AFFIRM.

I.

During the summer of 2023, the Drug Enforcement Administration ("DEA") began investigating a suspected marijuana-trafficking organization operating in and around Chattanooga, Tennessee. The investigation led agents to Seaberg and Shelton. On July 16, 2023, agents arranged for a confidential informant ("CI") to call Shelton about making a large purchase of

marijuana. Shelton met up with the CI later that day to discuss the sale. At their meeting, Shelton advised that his "partner, [Seaberg]" would have access to several hundred pounds of marijuana in August. (Shelton PSR ¶ 20). A few days later, Shelton invited the CI to meet over dinner to discuss the sale.

On July 26, 2023, Seaberg, Shelton and the CI gathered for dinner, and Seaberg showed the CI photographs of marijuana. Seaberg told the CI that he had several clients in the area and explained that he collects their orders and then sends a driver to California to pick up and transport the marijuana back to Tennessee. Once the shipment arrived, Seaberg would sort the marijuana and deliver the orders to his customers. Seaberg agreed to sell the CI 150 pounds of marijuana for $165,000.

Shelton later called the CI to confirm the purchase and agreed to meet on August 10, 2023, at a local Cracker Barrel to conduct the sale. Shelton and Seaberg first met at Seaberg's residence and loaded packages of marijuana into a vehicle. Shelton instructed an unnamed co-conspirator, who was armed with two handguns, to follow them in Shelton's vehicle to the Cracker Barrel for security in case "things went bad." Seaberg and Shelton arrived at the Cracker Barrel while their security escort parked at a nearby Chick-fil-A. In short order, agents approached Shelton and Seaberg's vehicle, saw the marijuana, and arrested the defendants. Authorities recovered 150 pounds of marijuana from the vehicle and found a loaded handgun belonging to Shelton under the passenger seat.

Shelton and Seaberg pleaded guilty to (1) conspiracy to distribute and to possess with intent to distribute 50 kilograms or more of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; and (2) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), (h).

During sentencing, both Shelton and Seaberg objected to their respective presentence investigation reports ("PSR"). Shelton argued that he should receive a downward adjustment for a minimal or minor role under United States Sentencing Guidelines ("USSG") § 3B1.2. The district court disagreed and denied his objection. The district court adopted the PSR's recommendation and found a base offense level of 23. The government then moved for a downward departure based on Shelton's substantial assistance under USSG § 5K1.1. The district court granted that motion and decreased Shelton's offense level by three. The resulting adjusted offense level of 20 and criminal history category I placed his Guidelines range at 33 to 41 months. Shelton moved for a downward variance based on the decriminalization of marijuana in many jurisdictions, which the district court denied. After considering the 18 U.S.C. § 3553(a) factors, the court sentenced Shelton to 33 months in prison on each count, to be served concurrently.

Seaberg objected to his PSR's recommendation for a leadership-role enhancement under USSG § 3B1.1. The district court denied this objection. It then adopted the PSR's recommendation and found a base offense level of 25, which included the two-point leadership-role enhancement. The government moved for a downward departure based on Seaberg's substantial assistance under USSG § 5K1.1. The district court granted that motion and decreased Seaberg's offense level by two. From there, the district court determined a Guidelines range of 46 to 57 months based on an offense level of 23 and criminal history category of I. Seaberg moved for a variance on multiple grounds, each of which the district court denied. After considering the § 3553(a) factors, the court sentenced Seaberg to 46 months in prison on each count, to be served concurrently.

Shelton and Seaberg now challenge their sentences as procedurally and substantively unreasonable.

II.

We review both the procedural and substantive reasonableness of a sentence under the abuse-of-discretion standard. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). "When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact de novo." *United States v. Nicolescu*, 17 F.4th 706, 721 (6th Cir. 2021) (citation and emphasis omitted). And we review de novo the district court's interpretation of the Guidelines. *Id.* at 722.

III.

"Procedural reasonableness requires the court to 'properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *Parrish*, 915 F.3d at 1047 (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)). Substantive reasonableness focuses on the length of the sentence. *Id.* A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation modified).

A. Shelton's Sentence

1. Procedural Reasonableness—Mitigating Role Adjustment

Shelton first argues that his sentence is procedurally unreasonable because the district court misapplied the Guidelines by declining to reduce his base offense level under USSG § 3B1.2. On appeal, Shelton contends that he was a minor participant in the conspiracy to distribute marijuana and, therefore, should have received a two-level downward adjustment.

Section 3B1.2 instructs sentencing courts to decrease the base offense level based on the extent of the defendant's participation in the offense. USSG § 3B1.2. Where the defendant was "a minor participant," the district court should decrease it by two levels. *Id.* § 3B1.2(b). Shelton bears the burden of showing by a preponderance of the evidence that he is entitled to a mitigating-role adjustment. *United States v. Sherrill*, 972 F.3d 752, 770 (6th Cir. 2020) (citing *United States v. Daneshvar*, 925 F.3d 766, 790 (6th Cir. 2019)). We review a district court's denial of a mitigating-role reduction for clear error. *United States v. Mosley*, 53 F.4th 947, 963 (6th Cir. 2022) (citing *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010)).

As relevant here, the Guidelines do not define what constitutes a "minor" participant, but its "usual meaning[] [is] obvious enough." *United States v. Warren*, No. 22-3323, 2023 WL 1961222, at *3 (6th Cir. Feb. 13, 2023). In considering the applicability of a minor-role adjustment, we have consistently determined that a defendant is a minor participant if he is "less culpable than most other participants, but whose role could not be described as minimal." *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (citation omitted); *see also United States v. Gabbard*, 586 F.3d 1046, 1052 (6th Cir. 2009) (per curiam); *United States v. Sturgill*, 761 F. App'x 578, 584 (6th Cir. 2019). Likewise, the Guidelines commentary explains that the adjustment should be applied to defendants who are "substantially less culpable than the average participant in the criminal activity." USSG § 3B1.2 cmt. n.3(A).

Shelton's role was not unimportant as compared to his co-conspirators. True, Seaberg managed the connection with their drug supplier. But Shelton's involvement in the sale was no less important; Shelton managed their connection with the customer. For instance, Shelton introduced the CI to Seaberg and handled preliminary and follow-up communications with the CI

about the transaction. He also helped Seaberg in loading the marijuana, arranged for security to be present during the sale, and transported the drugs to the transfer location.

Still, Shelton points to several non-exhaustive factors from the Guidelines commentary to consider, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* § 3B1.2 cmt. n.3(C). But the balance of these factors does not favor him. The district court concluded that Shelton's role in the conspiracy did not warrant a downward adjustment, as Shelton failed to show that his role in the offense was "less than the typical defendant or the average participant in the conspiracy." (Shelton Sent'g Tr., R 102, PageID 685). Based on this factual record, we cannot say that the district court clearly erred.

While Shelton was not familiar with every detail of the conspiracy, the record shows that Shelton was sufficiently familiar with the scope and structure of its operations. For instance, when the CI contacted Shelton about making a large purchase of marijuana, Shelton relayed that he and Seaberg would have access to several hundred pounds of marijuana from a large shipment that was expected in August. So, even though Shelton was not involved in sourcing the drugs, he had enough knowledge about the quantity and the general timeline of accessibility for distribution to discuss the possibility of a sale. Shelton was also involved in planning and organizing the specific sale that was charged in this conspiracy. Shelton was the CI's main point of contact. And even though Seaberg took the lead in discussions, Shelton arranged and participated in the meeting with

the CI to negotiate the sale of the drugs. He also coordinated logistics for the delivery, which included communicating with the CI about location and arranging for security.

Beyond these actions, Shelton described himself as Seaberg's "partner," assisted Seaberg with loading the marijuana for distribution, and accompanied Seaberg to deliver the drugs. We have held that such conduct can show more than just a minor role in the operation. *See, e.g.*, *Gabbard*, 586 F.3d at 1052 (defendant described himself as a partner to the CI, introduced coconspirators to one another, and participated in marijuana sales transactions). True, in *Gabbard* a defendant held himself out as a partner in an attempt to increase his standing, while there is no suggestion here that Shelton was attempting such a boast. *See id.* But here, there is no reason to reject Shelton's representation that he had apparently already attained the status of Seaberg's partner. And unlike in *United States v. Cochran*, 14 F.3d 1128 (6th Cir. 1994), which Shelton cites, Shelton was not just a courier or confidante. *See* 14 F.3d at 1129–31.

Although the government concedes that Shelton lacked decision-making authority in the drug-trafficking conspiracy, the record shows that Shelton's participation was not insignificant, and he stood to benefit financially from the sale. The § 3B1.2 commentary factors thus support the district court's finding that Shelton was not a minor participant in the conspiracy.

Resisting this conclusion, Shelton contends that the district court failed to consider his culpability in relation to the unnamed participants in the conspiracy who transported and supplied Seaberg the drugs. However, the district court did consider these unnamed participants, as reflected in the court's questioning about how Shelton compares to those unnamed co-conspirators. And, importantly, Shelton failed to develop facts to support his claim that these unnamed co-conspirators were the average participants in the conspiracy or were substantially more involved than he was. The record contained, at most, speculation about how much these individuals knew

about and benefited from the conspiracy. On this record, Shelton has not established that the district court clearly erred in finding that he was not a minor participant in the drug conspiracy.

Shelton also contends that the district court altogether failed to consider his role in the money-laundering conspiracy in deciding whether he was entitled to a reduction under § 3B1.2. The government counters that the court necessarily considered Shelton's role in the money-laundering scheme when it considered Shelton's role in the drug conspiracy, because the money-laundering "scheme was deeply entwined with the conspiracy to distribute marijuana." (Appellee's Br., ECF 20, 14–15). It contends that this deep connection arises because the object of the money-laundering conspiracy was to use the drug sale proceeds to purchase more drugs in furtherance of the drug conspiracy. We agree.

The money laundering in this case was a "promotional" scheme, which consists of "using money gained from drug sales to buy more drugs," thereby "promot[ing] the conspiracy by allowing it to continue or grow." *United States v. Tolliver*, 949 F.3d 244, 247–48 (6th Cir. 2020) (per curiam) (emphasis omitted). Shelton admitted as part of the factual basis for his guilty plea that he and Seaberg used the proceeds from the sale of marijuana to buy additional marijuana to sell. So this was part of their agreed criminal activity. Because the promotional money-laundering scheme and the drug conspiracy overlap, Shelton's conduct advancing the drug conspiracy also advanced the money-laundering conspiracy. And thus, as the government argues, in considering Shelton's role in the drug conspiracy, the district court necessarily considered his role in the money-laundering conspiracy.

Because Shelton played an integral role in obtaining the proceeds from the drug conspiracy, his role in the money-laundering conspiracy was not minor. It matters not that Seaberg, rather than Shelton, ultimately arranged for the interstate shipment of the drugs and presumably paid the

supplier. By arranging sales that generated proceeds used to fuel the purchase of future marijuana shipments for distribution, Shelton's actions directly promoted the unlawful activity underlying the money-laundering conspiracy. We have explained that "while [the defendant] might not have been as in control of the operation as [his co-defendant] . . . merely having less authority than some other persons in an operation does not mandate a role reduction." *United States v. Guerrero*, 76 F.4th 519, 534 (6th Cir. 2023). The same is true here.

Accordingly, Shelton has not demonstrated that the district court's rejection of his request for a mitigating-role adjustment rendered his sentence procedurally unreasonable.

### 2. Substantive Reasonableness

Next, Shelton challenges the substantive reasonableness of his sentence, arguing that the district court did not give enough weight to his limited role, history and characteristics, and the changes in marijuana laws. To begin, the district court imposed a sentence at the bottom of the advisory range. Because this sentence is within-guidelines, we presume it is reasonable. *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). Shelton bears the burden of rebutting this presumption. *See United States v. Miller*, 73 F.4th 427, 431 (6th Cir. 2023).

Shelton first argues that his "limited" involvement in the marijuana transaction charged in this case warranted a sentence below the Guidelines range. (Shelton Br., ECF 12, 43). But this argument merely rehashes his minor-role adjustment argument. And for the reasons already discussed, it fails.

Beyond challenging his role, Shelton asserts that his criminal and employment history and his familial support weighed in favor of a downward variance. We have explained that "although a defendant's criminal record is relevant to determining the applicable criminal history category . . . it is usually not a proper reason for a variance precisely because the Guidelines

already take it into account." *United States v. Boucher*, 937 F.3d 702, 711 (6th Cir. 2019) (citation modified). And the district court considered Shelton's employment history and family support in fashioning his sentence. The district court noted that it received "a very large number of letters" in support of Shelton and observed that Shelton was "a hard worker," "responsible," "married," and has "a supporting family." (Shelton Sent'g Tr., R. 102, PageID 668, 705). Nevertheless, the district court elected to impose a within-Guidelines sentence because of the need for deterrence, to provide just punishment, to emphasize the seriousness of the offense (particularly as it relates to combining guns and drugs), and to protect the public. "That the district court did not weigh the § 3553(a) factors as [Shelton] hoped does not compel the conclusion that it imposed an unreasonable sentence." *United States v. Robinson*, 892 F.3d 209, 216 (6th Cir. 2018).

Separately, Shelton argues that the changes in the treatment of marijuana, as reflected in part by decriminalization across various states, warranted a downward variance because "violating federal marijuana laws is not as serious an offense as it once was," and a within-Guidelines sentence would thus "overstate the seriousness" of the offense. (Shelton Br., ECF 12, 52–53). The district court allowed that "there is a certain degree of appeal to [his] argument," but ultimately found no reason to vary from the advisory Guidelines range. (Shelton Sent'g Tr., R. 102, PageID 693–95). In coming to its conclusion, the district court acknowledged the policy debate surrounding the legalization of marijuana. The district court rejected the notion, however, that legalization of marijuana by some states suggests that marijuana trafficking results in less harm. (*Id.* at 694). The district court gave examples of the continuing harm wrought by other crimes that have been decriminalized in some jurisdictions and crimes that have been dropped from prosecution priorities. Comparing marijuana decriminalization to those examples and recognizing

marijuana trafficking's enduring status as a federal offense, the court did "not see any reason at all why [it] should vary from the guidelines." (*Id.* at 695). This was not an abuse of discretion.

Finally, Shelton also argues that a within-Guidelines sentence for a marijuana offense would create unwarranted sentencing disparities and specifically points to a district court case before another judge in which a defendant was sentenced to less time for a marijuana offense. As an initial matter, § 3553(a)(6) is "an improper vehicle for challenging a within-guidelines sentence." *United States v. Medlin*, 65 F.4th 326, 334 (6th Cir. 2023) (citation modified). And by correctly calculating the Guidelines range, the district court has "necessarily taken into account the need to avoid unwarranted sentence disparities." *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (citation omitted).

Accordingly, the district court did not abuse its discretion in choosing a sentence within the Guidelines.

B.      Seaberg's Sentence

1.      Procedural Reasonableness—Authority to Vary from Guidelines

In the district court, Seaberg adopted Shelton's argument for a downward variance premised on the policy shift of many states reflected by their decriminalization of marijuana. He contends that his sentence is procedurally unreasonable because the district court failed to recognize that it had the authority to vary from the Guidelines based on the policy-driven argument that, given the recent decriminalization trend, the Guidelines now overstate the seriousness of marijuana offenses. The parties disagree as to whether Seaberg forfeited this issue and, therefore, faces plain error review. We need not resolve this dispute, however, because any error by the district court was harmless.

A district court may vary from the Guidelines based on policy considerations. *United States v. Allen*, 93 F.4th 350, 359 (6th Cir. 2024). That is, "[a] district court may indeed disagree with a Guideline for policy reasons and may reject the Guidelines range based on that disagreement." *United States v. Brooks*, 628 F.3d 791, 799 (6th Cir. 2011) (emphasis omitted). That said, a district court is not required to vary from the Guidelines even if it disagrees with it. *Id.* at 800. But "[w]here a district court treats [the Guidelines] as effectively mandatory," we generally will remand for resentencing. *United States v. Thomas-Mathews*, 81 F.4th 530, 542 (6th Cir. 2023). In other words, "a district court commits procedural error by failing to appreciate the scope of its discretion and by indicating that policy disagreements are not a proper basis to vary from the Guidelines." *Id.* at 543 (citation modified).

Generally, "we presume that the district court understood its discretion to vary absent clear evidence to the contrary." *United States v. Karasarides*, 159 F.4th 972, 999 (6th Cir. 2025) (citation modified). So, "[w]hen a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal." *United States v. Johnson*, 407 F. App'x 8, 10 (6th Cir. 2010) (citation omitted).

Importantly, in determining whether to vary based on policy considerations, the district court must base its decision "on reasoned policy arguments, not on its lack of authority or institutional competence, separation-of-powers concerns, or any other grounds that suggest the district court cannot or should not reject an aspect of the Guidelines." *United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014); *see Thomas-Mathews*, 81 F.4th at 542–43 (explaining that the Supreme Court in *Kimbrough v. United States*, 552 U.S. 85 (2007), clarified that a district court must not impermissibly cede its discretion to Congress or rely on the Guidelines for reasons such

as "institutional competence, deference to Congress, or the risk that other judges will" do something different (quoting *Johnson*, 407 F. App'x at 11–12)).

Here, Seaberg adopted Shelton's argument for a variance based on the Guidelines' treatment of marijuana, namely that given the changes in marijuana laws across states, the Guidelines overstate the dangerousness of marijuana. At Shelton's sentencing, which took place roughly a month before Seaberg's, the district court declined to grant Shelton a variance on this basis. The question of the court's recognition of its authority to vary from the Guidelines did not come up at Shelton's sentencing. And Shelton did not argue on appeal that the district court failed to recognize its authority in that regard. Still, the district court's explanation and reasoning for rejecting Shelton's request for a variance informs, in part, our analysis of Seaberg's sentencing.

At Seaberg's sentencing, the district court veered into a discussion of the court's role and seemed to place limitations on its own discretion. In considering Seaberg's request, the district court made the following observations in its back-and-forth with counsel: "And it's really not the role of the Court to disagree in policymaking issues with Congress, is it?"; "[o]urs is to do or die, whether we think Congress is right or wrong." (Seaberg Sent'g Tr., R. 110, PageID 921). Notwithstanding our general presumption that district courts understand their discretion to vary from the Guidelines based on policy reasons, the district court's statements here give us pause. We have held that similar sentiments, even when accompanied by a statement that the district court understands the advisory nature of the Guidelines, are sufficient to question the district court's understanding of its authority to vary. *See Kamper*, 748 F.3d at 742–43; *Thomas-Mathews*, 81 F.4th at 542; *Johnson*, 407 F. App'x at 10–11; *United States v. Montague*, 438 F. App'x 478, 483 (6th Cir. 2011).

- 13 -

But regardless of whether there was any error, we need not remand if "the district court would have imposed the same sentence if it had known of its discretion to vary categorically from the Guidelines based on policy disagreement." *Kamper*, 748 F.3d at 743 (citation modified). And here, besides its observations about Congress's authority, the district court also expressly adopted its reasoning from Shelton's sentencing for its rejection of Seaberg's request for a variance. As discussed earlier, at Shelton's sentencing, the district court explained the substantive reasons it disagreed with Shelton's policy argument for a variance and solely relied on those reasons for denying the requested variance. Accordingly, any error in failing to recognize its authority was harmless because the court's express adoption of its reasoning from the Shelton sentencing makes clear that the district court would have denied the motion for variance on this ground regardless. So Seaberg's challenge fails.

2.       Procedural Reasonableness—Leadership Role Enhancement

Seaberg also argues that his sentence is procedurally unreasonable because the district court miscalculated his Guidelines range by including a two-level leadership-role enhancement under USSG § 3B1.1(c). Section 3B1.1 provides that sentencing courts should increase the base offense level based on a defendant's leadership role in offenses involving multiple co-conspirators or defendants. As relevant here, a district court should increase the base offense level by two if "the defendant was an organizer, leader, manager, or supervisor" in the criminal activity. USSG § 3B1.1(c). The Guidelines do not define "organizer," "leader," "manager," or "supervisor," but the meaning of these terms is fairly straightforward. Relying on dictionary definitions, we have found that "[a]n organizer 'arranges' the criminal conduct, whereas a leader 'guides others' in it." *United States v. Collins*, No. 23-5585, 2024 WL 3723822, at *6 (6th Cir. Aug. 8, 2024) (citation omitted); *Warren*, 2023 WL 1961222, at *3. And "a manager 'direct[s] the affairs of' the criminal

conduct, whereas a 'supervisor' 'exercises general direction' over the criminal activities or the accomplices." *Collins*, 2024 WL 3723822, at *6 (alteration in original) (citation omitted).

In addition, the Guidelines commentary, which the parties accept, further provides that in determining whether a leadership-role enhancement is appropriate, district courts should consider:

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1 cmt. n.4. "[A] district court need not find each factor in order to warrant an enhancement." *United States v. Minter*, 80 F.4th 753, 758 (6th Cir. 2023) (citation modified). The government bears the burden of proving by a preponderance of the evidence that the enhancement should apply. *Id.* Given the fact-intensive nature of this inquiry, we review a district court's ultimate decision to grant a leadership enhancement deferentially. *Id.*

The factual record supports the district court's conclusion that Seaberg had a leadership or managerial role in the conspiracy. Seaberg took full responsibility for arranging for the transfer of marijuana into Tennessee for resale. This entailed collecting his clients' orders and sending a driver to California to pick up the marijuana and transport it back to Tennessee. Once the shipment arrived, Seaberg also sorted and delivered the orders to customers. And although Shelton was the CI's point of contact throughout the August 2023 transaction, the CI reported that Seaberg handled most of the talking and appeared to be in charge during their meeting to negotiate a deal. Further, it was Seaberg who showed the CI images of the marijuana and quoted a sale price. Seaberg also maintained drug ledgers detailing drug pricing and quantities. These facts point to Seaberg's leadership or managerial role in the conspiracy.

Moreover, Seaberg was responsible for paying the members of the conspiracy. And despite some dispute about how much Seaberg and Shelton each stood to earn from the sale to the CI, the district court could reasonably infer that Seaberg's share was larger. For instance, a search of Seaberg's home revealed a stash of over $16,000 in drug proceeds, whereas a similar search of Shelton's residence uncovered no evidence of drug proceeds. The amount of money found in Seaberg's home coupled with the fact that Seaberg invested more money into the conspiracy suggests that Seaberg likely claimed a right to a larger share of the proceeds from the conspiracy.

And at least as to the money-laundering conspiracy, the evidence showed that Seaberg played "an outsized role." *Nicolescu*, 17 F.4th at 726. Because Seaberg coordinated the shipments of marijuana from California, it follows that he also transferred the proceeds of the drug conspiracy to pay for future marijuana shipments.

Seaberg's argument that he and Shelton were equal participants in the conspiracy gets him nowhere. After all, "more than one individual may qualify as a leader or organizer of the conspiracy." *United States v. Wells*, 55 F.4th 1086, 1092 (6th Cir. 2022). Given our deferential standard of review, the district court did not err in applying the enhancement under § 3B1.1.

           3.       Substantive Reasonableness

Finally, Seaberg challenges the substantive reasonableness of his sentence. Like Shelton, Seaberg's sentence is within Guidelines, so we presume it is reasonable. *Perez-Rodriguez*, 960 F.3d at 754. Seaberg first argues that the district court failed to give considerable weight to his history and characteristics. Specifically, Seaberg contends that the district court should have varied downward based on Seaberg's work accomplishments, contributions to society, and his family support. As with Shelton, the district court acknowledged that Seaberg is not the typical defendant and praised Seaberg's life and upbringing as "commendable," noting that "there is a lot

to admire in [his] background." (Seaberg Sent'g Tr., R. 110, PageID 930). However, the district court explained that regardless of background, "[n]o one is excused from the law because of their circumstances or their rank or their position in society." (*Id.* at PageID 931). It emphasized the need to let Seaberg "and the public know that crimes such as this cannot be tolerated." (*Id.*). This was not an abuse of discretion.

Seaberg also takes issue with the district court's decision not to vary downwards based on the inclusion of the money-laundering charge. Specifically, he argues that because the money-laundering count in this case is rarely charged, the money-laundering count created a disparate sentence between Seaberg and similarly situated defendants who could have been but were not similarly charged. The district court gave proper consideration to this argument, observing that the prosecution has discretion to charge this money-laundering count and nothing in the record indicated that Seaberg was specifically charged differently based on improper considerations, such as race, gender, or ethnicity. Given this reasoned argument and in the absence of evidence showing otherwise, we cannot say that the district court abused its discretion.

Finally, Seaberg contends that the district court gave no weight to his argument that his lack of knowledge of the presence of a firearm during the commission of the crime deserved a downward variance, especially because the firearm disqualified him from certain reductions under the Guidelines. The district court did consider this argument and ultimately determined that even if Seaberg never knew or intended for a gun to be there, "the fact the gun was there has to be considered and given great weight." (Seaberg Sent'g Tr., R. 110, PageID 915). In so finding, the district court emphasized the increased danger and risk to innocent lives that the firearm introduced. The district court did not abuse its discretion in denying a variance on this basis after having properly considered the argument. Seaberg's sentence was substantively reasonable.

IV.

For the reasons stated, we **AFFIRM** Shelton and Seaberg's sentences.